IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| CHRISTAL GREEN, | * |
| | * |
| Plaintiff, | * |
| vs. | *   No. 5:11-cv-00208-SWW |
| | * |
| | * |
| ARKANSAS DEPARTMENT OF | * |
| COMMUNITY CORRECTION, | * |
| | * |
| Defendant. | * |

OPINION AND ORDER

Christal Green brings this action against the Arkansas Department of Community Correction (ADCC) alleging gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1]  Before the Court is ADCC's motion for summary judgment [doc.#24] to which Green has responded in opposition.  For the reasons that follow, the Court grants ADCC's motion for summary judgment.

I.

Green began working at ADCC on July 5th, 2005 as a Residential Supervisor I (Ex. 2, ADCC Offer letter).[2]  She was provided a copy of the ADCC Code of Ethics and Rules of Conduct with relevant portions highlighted, which she signed and acknowledged

---

[1] Green's introductory paragraph to her complaint states that she is alleging "discrimination based upon race and in the terms and conditions of her employment."  The substance of her complaint, however alleges that she was treated differently as compared to two male comparators "due to Green's gender (female)."  In her response to ADCC's motion for summary judgment, Green does not dispute that she is only alleging gender discrimination.

[2] All references to exhibits are those attached to ADCC's motion for summary judgment.

receiving (Pl.'s Resp. to Def.s' Facts in Support of Def.s' Mot. for Summ. J. at ¶ 12 [doc.#31]).

On March 15th, 2010, Elmira Howard, a resident at the ADCC, filed a grievance against Green stating that she had inappropriate contact with Green in the form of kissing (Ex. 12, Incident Report of Elmira Howard). Upon her return to work from a medical leave, Green was informed of allegations that she had inappropriate contact with a resident of the facility (Ex. 10, Green Depo at 20). Green was interviewed by Dickey Johnson, an ADCC investigator, regarding the incident (Pl.'s Resp. to Def.s' Facts in Support of Def.s' Mot. for Summ. J. at ¶ 16 [doc.#31]). After the interview, Green was asked to sign a document containing the questions and answers from the interview but she refused to do so "[b]ecause [she] wasn't going to be given a copy" (Ex. 10, Green Depo. at 25). Green was also asked to take a polygraph but she refused (Ex. 10, Green Depo. at 26-28). Green never told anyone at ADCC why she refused to take a polygraph–stating she "wasn't asked"–but later explained that she refused because she believed medications she was on would hinder her ability to pass a polygraph (Ex. 10, Green Depo. at 26-28).[3] Green, however, did not consult a physician, or any other expert, to confirm her opinion that the medications she was on would hinder her ability to pass a polygraph (Ex. 10, Green Depo. at 26; Pl.'s Resp. to Def.s' Facts in Support of Def.s' Mot. for Summ. J. at ¶ 20 [doc.#31]).

---

[3] At that time, Green's medications consisted of: Triam HCTZ for treatment of hypertension, Medroxypr AC for hormonal provera, Citalopram for depression, Valium for anxiety, Sertraline for depression, and Acetaminophen for pain (Ex 16, Response No. 1).

On April 16th, 2010, Green was terminated for failing to cooperate with an internal affairs investigation (Ex. 15, Termination Letter). Green appealed her termination but it was upheld (Ex. 10, Green Depo. at 29). This action followed.

II.

ADCC moves for summary judgment on grounds that Green has failed to establish a *prima facie* case of gender discrimination and ADCC has articulated a legitimate, non-discriminatory reason for Green's termination. ADCC argues there are no genuine issues of material fact with respect to these issues and that it is entitled to summary judgment as a matter of law.

A.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The nonmoving party must respond by submitting evidentiary materials that set out "'specific facts showing ... a

genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

B.

To establish a *prima facie* case of gender discrimination, a plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for her job; (3) suffered an adverse employment action; and (4) alleged facts that give rise to an inference of gender discrimination. *Norman v. Union Pacific R.R. Co.*, 606 F.3d 455, 460-461 (8th Cir. 2010) (citation omitted). If a *prima face* case is established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Qamhiyah v. Iowa State University of Science and Technology*, 566 F.3d 733, 746 (8th Cir. 2009) (citation and quotation marks omitted). If the employer makes such a showing,

the plaintiff must then demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination. *Id*.

Green argues that she was treated differently than other male employees and provides the names of Moreo Wilson and Christopher Phillips as similarly situated male employees (Ex. 10, Green Depo. at 30).  Like Green, Wilson was accused of violating ADCC's Code of Ethics and Rules of Conduct regarding relationships with residents (Ex. 14, Wilson Termination Letter; Pl.'s Resp. to Def.s' Facts in Support of Def.s' Mot. for Summ. J. at ¶ 27 [doc.#31]).  After an investigation, Wilson was terminated on March 5, 2010 for violating ADCC's Code of Ethics and Rules of Conduct (Ex. 14, Wilson Termination Letter; Pl.'s Resp. to Def.s' Facts in Support of Def.s' Mot. for Summ. J. at ¶ 28 [doc.#31]).  Similarly, Phillips was accused of violating ADCC's Code of Ethics and Rules of Conduct regarding establishing a relationship with a prior resident of ADCC and using State computers for business not related to the State (Ex. 17, Declaration of Phyllis Silas and Ex. 18, Termination Letter; Pl.'s Resp. to Def.s' Facts in Support of Def.s' Mot. for Summ. J. at ¶ 25 [doc.#31]).  ADCC investigated Wilson's conduct but he resigned, either before the investigation was concluded according to ADCC or after the investigation was concluded according to Green (Ex. 13, Resignation letter; Pl.'s Resp. to Def.s' Facts in Support of Def.s' Mot. for Summ. J. at ¶ 26 [doc.#31]).

The Court has carefully considered the matter and finds that even if Green has established a *prima facie* case of gender discrimination, her failure to cooperate with ADCC's internal investigation of Howard's allegations of inappropriate contact

constitutes a legitimate, non-discriminatory reason for her termination (Ex. 15, Termination Letter). Green has not demonstrated that ADCC's legitimate, non-discriminatory reason for her termination was a mere pretext for discrimination.

Green claims that differences in the investigative process that was applied to her as contrasted with Wilson and Phillips constitutes evidence of pretext. Specifically, Green claims that Wilson personally told her that he was not required to sign paperwork following his investigation by internal affairs as she was (Ex. 10, Green Depo. at 31-32).[4] Green also alleges that unlike herself, ADCC "extended to Phillips the courtesy of allowing him to tender his resignation instead of terminating him" and did not require him to submit to a polygraph examination (Pl.'s St. of Facts at ¶¶ 18-20).[5] But even if there were differences in the investigative process between Green, Wilson and Phillips, Green does not allege or provide evidence that Wilson or Phillips failed to cooperate with the internal affairs investigation as she did.[6] Green simply has not demonstrated that ADCC's legitimate, non-discriminatory reason for her termination–her failure to

---

[4] The Court notes that this claim is based on hearsay and Green "cannot rely on hearsay to avoid summary judgment." *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 885 (8th Cir. 2009).

[5] Green argues, without citation of authority or evidence, that she was "medically unable to submit to a polygraph examination" because of the medication she was taking but Green, as previously noted, did not consult a physician, or any other expert, to confirm her opinion that the medications she was on would hinder her ability to pass a polygraph.

[6] Moreover, Green cites no authority and has presented no evidence for her apparent claim that ADCC had the power to prevent her from resigning from her job at any time had she so desired, even if there was a pending investigation against her. Green does not claim that she actually tried to resign from her job but was prevented from doing so.

cooperate with ADCC's internal investigation of Howard's allegations of inappropriate contact–was a mere pretext for discrimination.[7]

### III.

For the foregoing reasons, the Court grants ADCC's motion for summary judgment [doc.#24] in its entirety.  Judgment will be entered accordingly.

IT IS SO ORDERED this 6th day of December 2012.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[7] And it remains the case that Green, Wilson and Phillips were all accused of inappropriate conduct or contact with an ADCC resident and all lost their jobs following those accusations.  Green, then, was not disciplined differently from the two male employees to whom she compares herself.